UNITED STATES DISTRICT COURT WESTERN DISTRICT OF PENNSYLVANIA

Isaac Bunn

Plaintiff

v.

University of Pittsburgh Medical Center

Defendant

Civil Action No:

2:23-cv-282

FILED

FEB 27 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

AMENDED CIVIL COMPLAINT

AND NOW comes the Plaintiff, Isaac Bunn, by and through himself and files the following Complaint against UPMC and thereof avers as follows:

PARTIES

1. Plaintiff, Isaac Bunn (hereinafter "Plaintiff"), is an adult individual residing at 128 1/2, Braddock, PA 15104 of Allegheny County, Commonwealth of Pennsylvania.

2. Defendant, University of Pittsburgh Medical Center (hereinafter UPMC) is a nonprofit Healthcare provider, organized and existing under the laws of the Commonwealth of Pennsylvania with a headquarters at 600 Grant St 58th Floor, Pittsburgh, PA 15219

3. All individuals and management personnel described in the common facts below were employees of UPMC relevant to this Complaint and were subject to the control and supervision of UPMC.

COMMON ACUAL FACTS:

4. Plaintiff is a 54-year-old adult Black American male.

5. UPMC is a Pennsylvania nonprofit organization that employed more than 500 individuals when the unlawful conduct described below occurred and who has a documented history of entrenched racism, discrimination and retaliatory practices.

6. Plaintiff became employed with UPMC in June of 2012.

7. Plaintiff is currently unemployed due to ongoing medical conditions including severe anxiety disorder, panic disorder, social disorder, depression, irritable bowel syndrome, and chronic gout. He filed for social security disability in January of 2022.

8. Due to deteriorating mental and physical health issues, Plaintiff filed for and was approved for FMLA in May of 2021 while still employed with UPMC.

9. In May of 2021 Plaintiff made management and upper management aware of deteriorating physical and mental health medical conditions and how the conditions and ongoing hostel work environment were affecting him and his ability to perform tasks.

10. UPMC personal that were made aware but not limited to would include, Department manager, Benjamin Cabel, Department Director ,Heather Kruppa, Mr. Mark O'Hern, President UPMC EAST, UPMC McKeesport, Mr. Alexander Hill, Director, Operations, UPMC East and UPMC McKeesport, Mrs. Tracey Mason, HR Manager at UPMC East and Kari Bedillion, Director, Medical Staff Services.

11. In or around 2020, after years of complaining to Human Resources about being subject to a hostile work environment, racism, discrimination, and retaliatory actions, Plaintiff took his complaints directly to upper management and later, UPMC corporate HR department.

12. Those who were made aware of the unlawful conduct by Plaintiff would include but are not limited to, Mr. Mark O'Hern, President UPMC EAST, UPMC McKeesport, Mr. Alexander Hill, Director, Operations, UPMC East and UPMC McKeesport, Mrs. Tracey Mason, HR Manager at UPMC East and Kari Bedillion, Director, Medical Staff Services.

13. From at least late 2019 to mid-2021, at least two (2) other former Black UPMC employees were also discriminated against and harassed based on race in plaintiff's department.

14. On numerous occasions from mid-2020 through 2021 at least one other Black employee complained about racism, retaliation, discrimination, and harassment in Plaintiff's department to UPMC upper management.

15. Those who were made aware of the unlawful conduct by the other black employee would include but not limited to, Mr. Mark O'Hern, President UPMC EAST, UPMC McKeesport, Mr. Alexander Hill, Director, Operations, UPMC East and UPMC McKeesport, Mrs. Tracey Mason, HR Manager at UPMC East and Kari Bedillion, Director, Medical Staff Services.

16. As a result of having reported racism, improper workplace activities, an extremely a hostile work environment, and discrimination, Plaintiff's work environment was made unpleasant and even more difficult than before engaging in his protected actions.

17. In or around 2019 Plaintiff and another Black coworker were limited to two days of bereavement, while numerus white coworker was permitted 4-5 days. In some cases, weeks.

18. In August of 2020, after reporting her to upper management, Plaintiff was pulled into a disciplinary meeting by director Heather Kruppa and a supervisor from Human resources. Plaintiff was asked had he "participated in any of the recent George Floyd protests", was repeatedly told to "just admit to them that he didn't like white people" and was told "Not to bring that Black protest stuff here (UPMC EAST)."

19. In June of 2020 Plaintiff over herd director, Heather Kruppa referring to Black UPMC employees as "A different breed" to a group of white co-workers. When Director kruppa noticed that Plaintiff may have herd, she smiled, covered her mouth, and quickly walked away from the crowd of white coworker, who were laughing and looking towards the Plaintiff.

20. In June of 2020 director Heather Kruppa stated to Plaintiff in a disciplinary meeting that "she could not be racist because she had a Black God daughter."

21. In February of 2021 during Black history month, Plaintiff and another Black coworker was told by Manager, Ben Cabel, that he would never participate in community service by "volunteering in a soup kitchen just to serve inherently lazy people."

22. In February of 2021 manager Ben Cabel stated to Plaintiff and another Black coworker that "I thought that every first of the month was Black History Month."

23. In or around March of 2021 Plaintiff and two other Black female coworkers were confronted by Director, Heather Kruppa, because the dish room was backed up. Plaintiff pointed out to her that those who were responsible were on the computer playing games and on their phones. They were all white. As she walked away, Plaintiff and other Black coworkers over herd Director, Heather Kruppa say something to the effect of "this is why I can't stand working your type of breed."

24. In or around April of 2021 after a white co-worker's husband came to visit her at work, she (Melissa) felt comfortable enough in the work environment to tell Plaintiff that "my husband hates Black people and that he often calls them Niggers". She then went on to explain to Plaintiff "Not to think that or worry about her because most of the people I sale drugs to here at work and in the streets are black and I'm providing them a much-needed service." Plaintiff reported her comments and drug activities to management and upper management. Plaintiff offered the dates and times for management to confirm on video.

25. In or around May of 2021 Plaintiff was told by department manager Ben Cabel that he would have to work additional "mandatory" late shifts to accommodate the work hour request of new hirers. Plaintiff was then told that "as a Black man he should understand this". A few work schedules later, Plaintiff was made to work more undesirable shifts even though other white senior members in the department, comparable to the plaintiff's years of service, were allowed to make their own schedule and hours.

26. in or around 2021 Plaintiff was told by another Black employee that she was told by management that she "wasn't allowed to talk to plaintiff while at work if she knew what was best for her."

27. In or around September of 2021 Plaintiff was told by supervisor Sarah that a relative of hers needed a job and that "UPMC (EAST) didn't have a union, nor any affirmative action rules or quotas to follow so Plaintiff had better be on his P's and Q's."

28. In or around December of 2021 Plaintiff was told by supervisor Sarah that "Plaintiff and his mail order wife (Loshiel) should mind their own business and focus on doing their job" after Plaintiff asked her and a group of white coworkers if they were going to help him and a female Asian coworker (Loshiel) out in the backed-up dish room.

29. In mid to late December of 2021, after Plaintiff complained to supervisor Sarah about her and other white coworkers not helping him and Asian coworker in the dish room, Plaintiff was disciplined and written up for "insubordination" by Manager Ben Cabel and Director Heather Kruppa.

30. In April of 2021 Plaintiff got into an argument with manager Ben Cabel about a call off incident. The argument escalated after Plaintiff repeatedly told manager that he did in fact call off and that manager never left a proper call back number. Manager Ben Cabel reprimanded Plaintiff by writing him up and placing him on corrective action, even though the plaintiff had proof on his phone that he did in fact call in twice.

31. UPMC failed to take prompt and appropriate remedial action to prevent or correct ongoing racism, discrimination, retaliation and harassment of plaintiff after being made aware on numerus occasions.

32. On or about January 6th, 2022, sometime right after checking in for work, Plaintiff reported to management that he was violently ill and requested to leave early. Plaintiff was told that "the request would be denied and would be placed in his file as such if he did leave". Plaintiff was also reminded that "a decision wasn't made about the insubordination incident that had occurred a week or so before with supervisor Sarah" and that "It would be in plaintiff's best interest to stick it out".

33. After being denied permission to leave early on or about January 6th, Plaintiff experienced severe confusion, dizziness, brain fog and temporary black outs. All associated symptoms of his known medical conditions and disability.

34. Plaintiff sought medical attention and took Covid test at Med Express in Monroeville the following day, on January 7th of 2022. Plaintiff was told to quarantine.

35. On January 18th of 2022 Plaintiff was suspended by manager Ben Cabel for a work performance issue caused by a medical condition or disability. The Violation resulted in minimal to no harm to UPMC. Management routinely turned a blind eye to White employees who committed similar or worse violations.

Examples, all between2020-2021, would include but are not limited to:

A white coworker incorrectly delivered a tray of food to a patient that was NPO (Nothing by mouth). This made it to the patient. The same co-worker also delivered a tray of food to a patient who was on "Tube feed".

Both situations could have been fatal and caused serious harm to UPMC. Both incidents were grounds for termination. The coworker also had numerous write ups in her file. She was also selling and soliciting her personal products on the job (UPMC property) which management was made aware of. She was not terminated.

Another white coworker was vaping marijuana for months in front of the department director and other supervisors in plaintiff's department on UPMC property until plaintiff reported it to upper management. She was not terminated and continued to vape in the break room and rest room until she eventually left the job on her own.

Another white coworker was distributing/selling prescription and other street drugs at work, which was reported to upper management by Plaintiff and to department leaders. Plaintiff told them the specific times and days to check the video for prof. She was never terminated.

Another white coworker threated another employee from a different department by telling him that "they could step outside to settle it right now" and that "he would kill him" in front of customers and other employees. He was not terminated. In fact, a few days later he was promoted to supervisor.

36. On January 21st, 2022, Plaintiff was terminated by UPMC due to a work performance issue caused by a known medical condition or disability that UPMC was aware of.

37. In March of 2022, Plaintiff secured legal representation and filed a formal charge with the Equal Employment Opportunity Commission ("EEOC").

38. In November of 2022, Plaintiff was issued a right to sue letter by the EEOC.

39. in December of 2022, after almost a year of preparation, Plaintiff was abruptly abandoned by legal representation, Manes & Narahari LLC, and forced to file on his own. Plaintiff has no professional training in the legal field.

TITLE VII VIOLATIONS

COUNT I

Title VII, 42 U.S.C. § 2000e-2(a)

Hostile Work Environment, Discrimination Based on Race Against Plaintiff.

40. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 4-36, above.

41. Plaintiff and similarly situated employees were discriminated against and harassed based on race by management, supervisors, and coworkers.

42. Plaintiff was discriminated against based on his race by UPMC in the following ways:

43. The discriminatory statements, actions and conduct were unwelcome, sufficiently severe, or pervasive, and detrimentally affected the Plaintiff and his Health.

44. Employees and the work environment, were viewed as subjectively hostile and abusive by Plaintiff and at least two other Black employees and would be viewed as objectively hostile and abusive to a reasonable person.

45. Plaintiff and at least one other Black employee complained numerous times to upper management about the discrimination, racism, retaliation, and harassment. UPMC had actual or constructive knowledge of the ongoing discrimination, racism, harassment retaliation.

46. White coworker felt comfortable enough in the toxic environment to openly used the word "nigger" and UPMC personnel conducted no investigation and took no disciplinary action against the culprit after being made aware.

47. On two separate occasion Director Heather Kruppa, referred to Black employees as a "different breed". Upper management and HR were made aware.

48. UPMC failed to take prompt and appropriate remedial action to prevent or correct a hostile work environment, further racism, discrimination, retaliation, and harassment of plaintiff.

49. UPMC discriminated against Plaintiff based on race in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

COUNT II

Title VII. 42 U.S. C. § 2000e-3(a)

Retaliation Against Plaintiff for Engaging in Protected Activity.

50. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 4-36, above.

51. Plaintiff engaged in protected activity when he complained about discrimination, racism, retaliation, and harassment based on race.

52. In retaliation for Plaintiff's complaints, UPMC disciplined him with numerus unsubstantiated written reprimands, warnings relentless harassment, undesirable shifts among other things herein.

53. There was a direct and causal connection between Plaintiffs complaints and the materially adverse actions taken against him by UPMC.

54. The retaliation endured by Plaintiff over the years would dissuade a reasonable employee from making complaints of discrimination, racism, and harassment.

55. The retaliation was so severe or pervasive that it has had a detrimental and adverse effect on Plaintiff's quality of life, physical and mental health.

56. Management reprimanded Plaintiff for asking white supervisor and white coworkers for help.

57. Plaintiff was reprimanded and written up for not calling off when he had clear proof that he did call off.

58. UPMC retaliated against Plaintiff for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). This conduct resulted in Retaliation for opposing practices made illegal under Title VII.

COUNT III

AMERICANS with DISABILITIES ACT VIOLATIONS

ADA- Disability Discrimination, Failure to Accommodate, Wrongful Termination.

59. Plaintiff incorporates by reference of paragraphs 4-36 of his Complaint as though fully set forth herein

60. Plaintiff made his employer UPMC, aware of his medical conditions and asked for an accommodation due to medical conditions/disability, and his employer did not accommodate him, deemed it unnecessary to do so, and did nothing to remedy what was triggering or contributing to the medical episodes.

61. UPMC's Failure to accommodate or take action to prevent the racism, discrimination, retaliation, and hostile work environment constitutes a direct Adverse Action.

62. The actions of the Defendant UPMC, through its agents, servants, and employees, in discriminating against Plaintiff based on his actual and/or perceived disabilities and/or record of impairment, and failing to provide reasonable accommodation for his disability, constituted violations of the ADA.

63. The ADA makes it illegal to terminate an employee solely due to their disability, even though most employees in the United States work on an "at-will" basis, employers cannot terminate workers for performance issues caused by a known medical condition or disability.

64. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in his

termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

65. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, loss of quality of life and loss of self-esteem.

66. Plaintiff was wrongfully termination by UPMC due to a performance issue caused by a disability in violation of the Americans with Disabilities Act.

WHEREFORE, the plaintiff prays that the Court grant the following relief:

(A) Enjoin Defendant UPMC from:

(i) subjecting employees to discrimination, racism, and harassment-based on Race and disability.

(ii) retaliating against employees who engage in activity protected under Title VII.

(B) Order Defendant UPMC to develop and implement appropriate and effective measures designed to prevent discrimination, racism, harassment, and retaliation, including but not limited to policies and training for employees, supervisors and managers.

(C) Order Defendant UPMC to develop appropriate and effective measures to receive complaints of discrimination, harassment, and retaliation as well as a process for investigating such complaints.

(D) Award compensatory, exemplary, and punitive damages to Plaintiff in the amount of $750,000 to fully compensate him for his injuries caused by Defendant UPMC's discriminatory, harassing, racist, retaliatory conduct, and violations of the ADA and the Civil Rights Act of 1964, 42 U.S.C. and…

(E) Award such additional monetary relief as justice may require and see fit.

JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (a).

Respectfully Submitted,

BY: Mr. Isaac Bunn, "PRO SE"

412.628.7531

Vortex4eib21@hotmail.com